IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DALIA PENA,                          §
                                     §
          Plaintiff,                 §
                                     §
v.                                   §     CIVIL ACTION NO. H-06-3003
                                     §
STEWART TITLE COMPANY,               §
                                     §
          Defendant.                 §

**MEMORANDUM OPINION**

Pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 10).  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's motion.

**I.  Case Background**

Plaintiff filed this action against her former employer, claiming race, national origin, and age discrimination.  She raised claims of discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] Age Discrimination in Employment Act ("ADEA"),[3] and 42 U.S.C. § 1981 ("Section 1981").  Her complaint also charged Defendant with ratifying the actions of its officers and failing to use reasonable

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 17.

[2]     42 U.S.C. §§ 2000e-2000e-17

[3]     29 U.S.C. §§ 621-634.

procedures in hiring, training, supervising, and retaining supervisors.

Plaintiff worked for Defendant, a title company, for seven months in 1998.[4]   Plaintiff returned to work part time for Defendant in 2001 as a contract escrow assistant under the supervision of Keitha Bell ("Bell").[5]   Her duties included translating for Spanish-speaking clients, answering the phone, taking orders, talking to real estate agents, and processing real estate sales files.[6]  About two years later, Bell asked Plaintiff to become a full-time, permanent employee, and Plaintiff accepted the offer.[7]

On multiple occasions throughout her employment, Plaintiff and coworkers engaged in disagreements.[8]  For example, at some point in time, she questioned a coworker, Arthur Urdiales ("Urdiales"), about how he had handled an issue that arose in connection with a real estate closing.[9]   Urdiales and Plaintiff began to argue.[10]

---

[4]    Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, p. 35; Ex. Q, Charge of Discrimination.

[5]    Id. at Ex. A, Plaintiff's Deposition, pp. 35, 37-38.

[6]    Id. at p. 38.

[7]    Id. at p. 40-41.

[8]    Deposition of Keitha Bell, Docket Entry No. 21, pp. 64-65; see also pp. 75-81 (describing difficulty that arose between Plaintiff and an escrow officer with whom Plaintiff worked during Bell's vacation time).

[9]    Id. at pp. 41-42.

[10]    Id. at p. 42.

Bell, who characterized the argument as "practically a fight," called them into her office and investigated Plaintiff's accusation.[11]   Although Bell agreed with Plaintiff that Urdiales acted improperly, she also found that Plaintiff had not handled the situation in a professional manner.[12]   Plaintiff felt that Bell improperly refrained from intervening in the argument, thus, condoning Urdiales' use of abusive language.[13]   On occasion, Plaintiff and Bell had conflicts over such issues as vacation time, bonuses, and day-to-day operations.[14]

Plaintiff wrote a letter dated March 5, 2005,[15] to Ed Lester ("Lester"), chief executive officer,[16] regarding "Employee Relations/Grievances/Complaints."[17]   In the letter, Plaintiff complained about conflicts between her and Bell over compensation, overtime, time records, vacation, other employees' behavior,

---

[11]   Id. at pp. 42, 45.

[12]   See id. at pp. 42, 44-45.

[13]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. H, letter from Plaintiff to Ed Lester dated Mar. 5, 2005, Attach. 1 (unnumbered), p. 1 (unnumbered).

[14]   See Deposition of Keitha Bell, Docket Entry No. 21, pp. 67-74.

[15]   Plaintiff misdated the letter March 5, 2005; she actually sent it around April 5, 2005.  See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. I, notes from meeting with Plaintiff, p. 1.

[16]   The court cannot find any summary judgment evidence confirming Ed Lester's position with Defendant.

[17]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. H, letter from Plaintiff to Ed Lester dated Mar. 5, 2005.

licensure, associate referral bonuses,[18] among other issues that had arisen over the previous year.[19]   Plaintiff reported that Karen Cimrhanzel ("Cimrhanzel"), marketing representative, told Plaintiff and Plaintiff's daughter, who was also working for Defendant at the time, not to speak in Spanish and, on a separate occasion, commented that the receptionist was speaking too much Spanish.[20] In the letter, Plaintiff also complained that a billboard in the lobby was not English/Spanish bilingual.[21]

Steve Robison ("Robison"), Defendant's Houston president, and Cheryl Coppock ("Coppock"), human resources manager, met with Plaintiff in late April 2005 to discuss the concerns she raised in her letter.[22]   In that conversation, Robison and Coppock addressed each of the concerns raised by Plaintiff, including Cimrhanzel's comments on speaking Spanish.[23]   They committed to speaking with

---

[18]     An associate referral bonus is given to an employee who brings in new business.  See id. at Ex. I, notes from meeting with Plaintiff, p. 2; Ex. AA, interoffice memorandum dated Apr. 1, 1999.

[19]     See id. at Ex. H, letter from Plaintiff to Ed Lester dated Mar. 5, 2005, Attach. 1 (unnumbered).

[20]     Id. at Attach. 1 (unnumbered), p. 3 (unnumbered); see also Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 3, Affidavit of Belinda Pena, p. 1.

[21]     Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. H, letter from Plaintiff to Ed Lester dated Mar. 5, 2005, Attach. 1 (unnumbered), p. 3 (unnumbered).

[22]     See id. at Ex. A, Plaintiff's Deposition, p. 168; Ex. I, Notes from meeting with Plaintiff dated Apr. 25, 2005.

[23]     See id. at pp. 1-3.

Cimrhanzel about being more sensitive to others.[24]  Robison thanked
Plaintiff for her suggestion to make the billboard in the lobby
bilingual.[25]  After addressing Plaintiff's concerns, Robison turned
to issues with Plaintiff's performance, particularly reports of
Plaintiff being rude toward customers and problems in communication
between Plaintiff and Bell.[26]  The meeting lasted about two and one-
half hours.[27]

On November 15, 2005, Plaintiff sent an e-mail to Robison and
Coppock reporting an incident in which a coworker, Bell's daughter,
brought her dog to the office and held it in her lap as she
worked.[28]  Plaintiff claimed that the dog had frightened her by
barking and lunging at her when she approached its owner about work
business.[29]

The following day, Plaintiff received a warning for
unprofessional behavior that Plaintiff had demonstrated a week
earlier in connection with Bell's refusal to give Plaintiff an
associate referral bonus on a particular closing.[30]  At a meeting

---

[24]   Id. at p. 2.

[25]   Id. at p. 3.

[26]   See id. at p. 4

[27]   See id. at pp. 1, 5.

[28]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex.
K, e-mail from Plaintiff to Robison and Coppock dated Nov. 15, 2005.

[29]   See id.

[30]   See id. at Ex. L, Employee Warning Record, attached page.

on the subject attended by Coppock, Bell, and Plaintiff, Coppock explained away the presence of a dog in the office as a "rare exception[] when there is a special circumstance," in this case, an ill dog with a veterinarian appointment later in the day.[31]  Coppock then turned the meeting over to Bell to describe the incident that served as the basis for the corrective action.[32]  According to Bell's written warning, Plaintiff argued with Bell about a decision not to award an associate referral bonus, accused Bell of being "prejudiced against Hispanics[] and showing favoritism" and stated that the job was not the problem, Bell was the problem.[33]

In the meeting, Plaintiff said that she was not unhappy with Bell, but with some of the things that Bell did.[34]  Plaintiff expanded on her allegation of discrimination, saying that "as a Hispanic, she was oppressed, that Hispanics in the office were oppressed."[35]  As an example, she pointed to the requirement imposed by Bell on the office receptionist, Rosa Gonzalez ("Gonzalez"), to

---

[31]    Id. at Ex. M, notes to Plaintiff's file dated Nov. 16, 2005, p. 1 (unnumbered).

[32]    See id.

[33]    Id. at Ex. L, Employee Warning Record, attached page; see also Ex. A, Plaintiff's Deposition, pp. 91-93; Ex. M, notes to Plaintiff's file dated Nov. 16, 2005, p. 1 (unnumbered).

[34]    Id. at Ex. M, notes to Plaintiff's file dated Nov. 16, 2005, p. 2 (unnumbered).

[35]    See id. at pp. 1, 2 (unnumbered).  In her deposition, Plaintiff conceded that Bell's refusal to give Plaintiff a referral bonus in this particular instance did not have anything to do with Plaintiff's race.  See id. at Ex. A, Plaintiff's Deposition, p. 107.

6

greet customers first in English.[36]  Plaintiff asked if Bell and
Coppock would allow Gonzalez and Plaintiff to converse in Spanish.[37]
They responded that "there was no problem with it on their own, or
as long as they did not exclude anyone else in the office, and that
was only because of courtesy."[38]

The written warning noted that Plaintiff had received a prior
oral warning.[39]  In writing, Bell warned Plaintiff:

> You are being paid for professional behavior at work.
> Your act of making arguments and accusations as you did
> on November 10 is unprofessional behavior and will not be
> tolerated.  In the future you will not argue with me for
> any reason.  You will not argue with your coworkers for
> any reason.  You will not make any type of accusation to
> me or to anyone else in this office.
>
>      Any violation of the above will result in immediate
> termination.   THIS IS A FINAL WARNING.[40]

Plaintiff refused to sign the warning because she did not agree
with a statement in the warning that indicated Plaintiff said she
was unhappy with Bell.[41]

In December 2005, Gonzalez received a call for a coworker
during which Gonzalez confused the coworker's boyfriend with her

---

[36]   See id. at Ex. M, notes to Plaintiff's file dated Nov. 16, 2005, p.
2 (unnumbered).

[37]   Id.

[38]   Id.

[39]   Id. at Ex. L, Employee Warning Record.

[40]   Id. at attached page.

[41]   Id. at Ex. M, notes to Plaintiff's file dated Nov. 16, 2005, p. 3
(unnumbered); see also Ex. L, Employee Warning Record.

ex-husband.[42]  The coworker, Dana Levi ("Levi") became livid with Gonzalez, called her into Bell's office, and began to berate Gonzalez.[43]  Plaintiff observed Gonzalez leave Bell's office upset and, after a few minutes, went to the restroom looking for her.[44] While Plaintiff was comforting Gonzalez, Bell entered the restroom, followed by Levi and another coworker, Candie Giamis ("Giamis").[45] An argument ensued between Plaintiff, on the one hand, and Levi and Giamis, on the other.[46]  The encounter involved physical posturing and minor contact initiated by Levi and Giamis.[47]

On February 21, 2006, Gonzalez asked if one of her coworkers would answer the phones while she went to the restroom.[48]

_____

[42]   See id. at Ex. A, Plaintiff's Deposition, p. 112, Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 2.

[43]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, p. 112, Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 2.

[44]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, pp. 112-13, Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 2.

[45]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, p. 114, Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 2.

[46]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, pp. 114-15, Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 2.

[47]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, p. 114, Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 2.

[48]   Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, pp. 132-33; Ex. C, Affidavit of Andrea Smith, ¶ 5; Ex. F, Affidavit of Rosa Gonzalez, ¶ 12; Ex. N, e-mail from Brenda Demetriou to Bell dated Feb. 22, 2006; Ex. O, e-mail from Andrea Smith to Bell; Plaintiff's

Plaintiff, who was making copies at the time, said, "Hey, girl, you sound like a first grader asking permission to go to the bathroom."[49]   According to Andrea Smith ("Smith"), one of the coworkers to whom Gonzalez had been speaking, Plaintiff's tone was very rude, even though Plaintiff said that she intended it as a joke.[50]

Brenda Demetriou ("Demetriou"), another coworker, reacted by standing up and disagreeing with Plaintiff.[51]   Plaintiff responded by saying that Gonzalez was entitled to have others scheduled to cover her desk for fifteen-minute breaks so that she would not have to go through the process of finding someone each time she needed to use the restroom.[52]   Demetriou followed Plaintiff back to her

---

Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 1 (incorrectly numbered "2 of 3").  Andrea Smith's affidavit dates the incident as "[o]n or about February 20, 2006," but e-mails sent on February 22, 2006, date the incident to February 21, 2006.  Compare Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. C, Affidavit of Andrea Smith, ¶ 5 with Ex. N, e-mail from Brenda Demetriou to Bell dated Feb. 22, 2006; Ex. O, e-mail from Andrea Smith to Bell dated Feb. 22, 2006.  The exact date is not material to the resolution of Defendant's motion.

[49]   Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, pp. 133, 143; see also Ex. F, Affidavit of Rosa Gonzalez, ¶ 12; Ex. N, e-mail from Brenda Demetriou to Bell dated Feb. 22, 2006; Ex. O, e-mail from Andrea Smith to Bell; Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 1 (incorrectly numbered "2 of 3").

[50]   Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, p. 136; Ex. C, Affidavit of Andrea Smith, ¶ 5; Ex. O, e-mail from Smith to Bell dated Feb. 22, 2006.

[51]   Id. at Ex. A, Plaintiff's Deposition, p. 136; see also Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 2, Affidavit of Rosa Gonzalez, p. 3 (unnumbered).

[52]   Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. A, Plaintiff's Deposition, pp. 136-37, 140.

desk, yelling at her.[53]  The incident concluded when Plaintiff told Demetriou that they were both entitled to their opinions.[54]

Demetriou and Smith complained to Bell the next day about Plaintiff's comments.[55]  On February 22, 2006, Coppock and Bell met with Plaintiff concerning Plaintiff's first-grader comment and the ensuing conflict with Demetriou and Smith.[56]  Bell asked Plaintiff about the incident, and Plaintiff stated that she was "teasing when she said that Rosa was being treated like a first[]grader."[57] Coppock reminded Plaintiff of the November 16, 2005, meeting at which Coppock and Bell warned Plaintiff that any further unprofessional behavior or arguing with associates would result in termination.[58]  Coppock terminated Plaintiff.[59]  After Plaintiff's termination, Smith, an Hispanic woman, filled Plaintiff's position as an escrow assistant for Bell.[60]

---

[53]    Id. at p. 140.  Neither Demetriou or Smith's account indicates that Demetriou yelled at Plaintiff or followed her back to her desk.  See id. at Ex. N, e-mail from Demetriou to Bell dated Feb. 22, 2006; Ex. O, e-mail from Smith to Bell dated Feb. 22, 2006.

[54]    Id. at Ex. A, Plaintiff's Deposition, pp. 140, 144.

[55]    Id. at Ex. C, Affidavit of Andrea Smith, ¶ 6; see also Ex. N, e-mail from Demetriou to Bell dated Feb. 22, 2006; Ex. O, e-mail from Smith to Bell dated Feb. 22, 2006.

[56]    Id. at Ex. A, Plaintiff's Deposition, p. 146; see also Ex. P, notes on termination meeting dated Feb. 22, 2006.

[57]    Id. at Ex. P, notes on termination meeting dated Feb. 22, 2006.

[58]    Id.

[59]    See id.

[60]    Id. at Ex. C, Affidavit of Andrea Smith, ¶¶ 3, 4; Deposition of Keitha Bell, Docket Entry No. 21, pp. 98, 117.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on March 3, 2006.[61] Therein, she alleged national origin discrimination, race discrimination, and retaliation.[62] The only incident recorded on the charge was Cimrhanzel's remark to Plaintiff and a coworker that they should not speak in Spanish.[63] After an investigation, the EEOC was unable to conclude that Defendant had discriminated against Plaintiff and issued a dismissal and notice of rights letter.[64] The EEOC sent the original letter, dated May 18, 2006, to the incorrect address.[65] The EEOC reissued the right-to-sue letter, and Plaintiff received it sometime during the last week of June.[66] Plaintiff filed another charge of discrimination on September 21, 2006, in which she alleged age discrimination, but included no additional factual allegations.[67] The EEOC issued a dismissal and notice of rights

---

[61]   See Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. Q, Charge of Discrimination dated Mar. 3, 2006.

[62]   See id.; Ex. R, undated memorandum from Plaintiff to Jeanette M. Leino (amending charge of discrimination to include allegations of race and retaliation).

[63]   See id. at Ex. Q, Charge of Discrimination dated Mar. 3, 2006.

[64]   See id. at Ex. T, Dismissal and Notice of Rights dated May 18, 2006 (indicating that the EEOC was unable to conclude that Defendant violated discrimination laws).

[65]   See id. at Ex. T, Dismissal and Notice of Rights dated May 18, 2006; Ex. W, letter from EEOC to Whom it May Concern dated June 12, 2006.

[66]   Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 5, Plaintiff's Affidavit, ¶ 1.

[67]   See id. at Ex. X, Charge of Discrimination dated Sept. 21, 2006.

letter on September 27, 2006, stating that the second charge was a duplicate of the first.[68]

Plaintiff filed this action on September 25, 2006.[69] Defendant filed the pending summary judgment motion on May 21, 2007.[70] Upon request, the court granted Plaintiff until September 10, 2007, to respond to Defendant's motion.[71] Plaintiff filed a response on September 13, 2007,[72] a supplemental response on September 17, 2007,[73] and an additional exhibit on September 18, 2007.[74] The court has considered all of Plaintiff's briefing and evidence, despite the untimely filing.

## II.  Objections to Evidence

Plaintiff objects to several of Defendant's exhibits as inadmissible because "they constitute hearsay, are not under oath," and are not authenticated properly.[75] Exhibits H, I, J, K, L, M, N, O, and P are authenticated by Coppock as "documents obtained

---

[68]    See id. at Ex. Z, Dismissal and Notice of Rights dated Sept. 27, 2006.

[69]    See Complaint, Docket Entry No. 1.

[70]    See Motion for Summary Judgment, Docket Entry No. 10.

[71]    See Motion for Additional Time to Respond, Docket Entry No. 12; Minute Entry Order, Docket Entry No. 16.

[72]    Docket Entry No. 19.

[73]    Docket Entry No. 20.

[74]    Docket Entry No. 21.

[75]    Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, p. 5.

12

from employee personnel files and other business records" that "were kept in the regular course of business."[76]   Records of regularly conducted activity are not excluded by the hearsay rule, even if the declarant is available as a witness.  Fed. R. Evid. 803(6).  Absent any more specific objection to these exhibits, the court finds that they are admissible.  Plaintiff's objection as to each of these exhibits is **OVERRULED**.   As to Exhibit S (notes of witness interviews conducted by the EEOC investigator), the court finds no form of authentication in the record and finds that the exhibit contains hearsay.  Plaintiff's objection to that exhibit is **SUSTAINED**.  The court does not rely on Exhibit Z for the truth of the matter asserted, i.e., that the age discrimination charge by Plaintiff was a duplicate charge, but only as an indication that Plaintiff received a response from the EEOC on that charge. Plaintiff's objection is **OVERRULED**.

Defendant objects to multiple portions of the affidavits submitted by Plaintiff in response to Defendant's motions for summary judgment.  The court agrees that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).  Because the court has not considered the

---

[76]     Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. G, ¶ 5.

portions of the affidavits of Rosa Espinoza, Gonzalez, and Belinda Pena that do not comport with the Federal Rules of Civil Procedure, the court **OVERRULES AS MOOT** Defendant's objection.   Defendant's objection to Plaintiff's affidavit is also **OVERRULED** because the court does not find the testimony therein to directly contradict her deposition testimony (when read in its entirety).

### III.   Summary Judgment Motion

Defendant moves for summary judgment on several grounds:  1) Plaintiff's Title VII claims are barred by limitations; 2) Plaintiff cannot establish a prima facie case of discrimination, hostile work environment, or retaliation; 3) Plaintiff cannot rebut Defendant's legitimate nondiscriminatory reason for dismissing Plaintiff; and 4) Plaintiff's claims for negligent hiring, training, supervising, and retaining are frivolous.   Plaintiff agrees that her age discrimination claim and her negligent hiring, training, supervising, and retaining claim should be dismissed, but argues against dismissal of the other claims.

### A.   <u>Review Standard</u>

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).   A material fact is a fact that is identified by applicable

substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could
resolve the issue in favor of either party.  Anderson, 477 U.S. at
250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th
Cir. 2002).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992).  If the moving party can show an absence of record
evidence in support of one or more elements of the case for which
the nonmoving party bears the burden, the movant will be entitled
to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response
to a showing of lack of evidence, the party opposing summary
judgment must go beyond the pleadings and proffer evidence that
establishes each of the challenged elements of the case,
demonstrating that genuine issues of material fact do exist that
must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in
favor of the nonmoving party, and any reasonable inferences are to

be drawn in favor of that party." Evans v. City of Houston, 246
F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co.
v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court
should not "weigh evidence, assess credibility, or determine the
most reasonable inference to be drawn from the evidence." Honore
v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some
metaphysical doubt as to the material facts." Meinecke v. H & R
Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory
allegations, unsubstantiated assertions, improbable inferences,
unsupported speculation, or only a scintilla of evidence will not
carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson,
286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary
judgment if, after an adequate period of discovery, the nonmovant
fails "to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party
will bear the burden of proof at trial." Celotex Corp., 477 U.S.
at 322.

An employee's subjective belief that she was the victim of
discrimination is insufficient to create an inference of
discriminatory intent. Lawrence v. Univ. of Tex. Med. Branch at
Galveston, 163 F.3d 309, 313 (5th Cir. 1999).  The court will grant
summary judgment for the employer if the evidence, taken as a
whole, would not allow a jury to infer that the reason for the

16

adverse employment action, at least in part, was discriminatory. See Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998).

**B.   Employment Discrimination Law**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Section 1981[77] also provides an avenue of recourse for persons who experience racial discrimination in employment. See 42 U.S.C. § 1981; Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004). Both types of claims are analyzed according to the legal principles applicable to cases brought under the Title VII. Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003)(stating that the elements of proof are common to Title VII and Section 1981 retaliation claims); Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 342 (5th Cir. 2002)(stating that the standards on summary judgment for discrimination claims are the same under Section 1981 as under Title VII).

**C.   Analysis**

---

[77]   Section 1981 prohibits racial discrimination in the making or enforcing of contracts. 42 U.S.C. § 1981(a). As defined by the statute, the phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Before addressing Defendant's challenges to the merits of Plaintiff's hostile work environment, discrimination, and retaliation claims, the court must determine whether Plaintiff's Title VII claims were filed timely.

### 1. Administrative Prerequisites

In order to maintain a Title VII action, a plaintiff must exhaust administrative remedies with the EEOC. See 42 U.S.C. §§ 2000e-5(e), (f); Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). Receipt of a statutory notice of the right to sue signals exhaustion. Cf. id. at 379 ("Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.") Upon receipt of a right-to-sue notice, a plaintiff has ninety days within which she may bring a civil action against her employer. 42 U.S.C. § 2000e-5(f)(1); Taylor, 296 F.3d at 379. Compliance with the ninety-day time limit is strictly construed. Taylor, 296 F.3d at 379.

Here, the EEOC sent the original right-to-sue notice to the wrong address. According to EEOC records,[78] Frank Zamarripa ("Zamarripa"), federal investigator, sent a second letter on June 12, 2006, addressed to "To Whom it May Concern" in which he explained that an error by the EEOC caused the delay in Plaintiff's

---

[78]    The EEOC records submitted by Defendant are not authenticated, but there seems to be no dispute between the parties regarding the letter sent by Frank Zamarripa, federal investigator, to Plaintiff on June 12, 2006, or the attached facsimile transmittal cover sheet.

receipt of the right-to-sue letter.[79]   An undated facsimile transmittal cover sheet from Zamarripa to Plaintiff includes this note: "I mailed original today -- sorry.  Apparently secretary sent it to wrong address."[80]  Presumably, the "original" to which Zamarripa referred was the right-to-sue letter, but that is not perfectly clear from the evidence.

In her deposition, Plaintiff vacillated in response to questions about the date she received the right-to-sue letter, initially agreeing that she would have received the letter about June 12, 2006, and, later, stating that she was not sure that she received it within a few days of June 12, 2006.[81]  In an affidavit submitted with her summary judgment response, Plaintiff explained that she was "unable to recall exactly as to when [she] received the EEOC right to sue letter, although [she] earnestly believe[d] that [she] received it sometime towards the last week in June."[82]

As Defendant points out, if "the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed."  Taylor, 296 F.3d at 379.  In

---

[79]     Defendant's Motion for Summary Judgment, Docket Entry No. 10, Ex. W, letter from Zamarripa to Plaintiff dated June 12, 2006.

[80]     Id. at Ex. W, facsimile transmittal cover sheet.

[81]     See id. at Ex. A, Plaintiff's Deposition, pp. 63, 64.

[82]     Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 19, Ex. 5, Plaintiff's Affidavit, ¶ 1.

Taylor, the Fifth Circuit presumed receipt seven days after the EEOC issued the letter. See id. at 380.

However, the only evidence before this court that concerns the date on which the EEOC mailed the right-to-sue letter to Plaintiff is far from conclusive. The language of the letter written by Zamarripa on June 12, 2006, does not indicate that the right-to-sue letter accompanied that letter. The facsimile transmittal cover sheet is undated and does not indicate what document(s) were attached to it. Because Defendant's evidence does not show indisputably the mailing date of the right-to-sue letter (to the correct address), Defendant cannot prevail, regardless of whether the presumption-of-receipt doctrine should apply.

Plaintiff's Title VII claims survive this challenge.

### 2.  Hostile Work Environment

In order to maintain a claim of hostile work environment based on race discrimination, a plaintiff must demonstrate that: 1) she is a member of a protected group; 2) she was subjected to unwelcome harassment; "3) the harassment complained of was based on race; 4) the harassment affected a term, condition, or privilege of employment;" and, in cases of harassment alleged against coworkers, 5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Ramsey, 286 F.3d at 268; see also Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003). Whether an environment is hostile or abusive depends on a totality

of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, rather than merely offensive, and the degree to which the conduct unreasonably interferes with an employee's work performance.  Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007).

Discourtesy, rudeness, teasing, offhand comments, and isolated incidents (unless extremely severe) do not amount to "discriminatory changes in the terms and conditions of employment." Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (internal quotations omitted); see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  The conduct about which the plaintiff complains must be both objectively and subjectively offensive.  Shepherd v. Comptroller of Pub. Accounts of the State of Tex., 168 F.3d 871, 874 (5th Cir. 1999).  A hostile work environment is one in which the abuse is continuous, not simply episodic.  See Faragher, 524 U.S. at 787 n.1.

The evidence in this case includes only the following incidents that even remotely implicate race or national origin:  1) a coworker's comment to Plaintiff and her daughter that they should not speak in Spanish; 2) a coworker's comment that the receptionist spoke too much Spanish; 3) Defendant's failure to have a bilingual billboard in the lobby; and 4) Bell's requirement that the receptionist initially greet customers in English.  Plaintiff

worked for Defendant for about five years.  These incidents took place over the course of more than one year.

No reasonable jury could find for Plaintiff on her hostile work environment claim based on this evidence.  To the extent that these isolated incidents could be characterized as abusive, it is beyond dispute that they were not frequent, severe, physically threatening, humiliating, or continuous.  Only one was directed at Plaintiff, and, given the surrounding circumstances, none was objectively offensive.  Therefore, regardless of how rude any may have been or how offended Plaintiff may have felt, all of the cited incidents collectively fail to rise to the level of actionable harassment.

Plaintiff's hostile work environment claim, whether under Title VII or Section 1981, must be dismissed.

### 3. <u>Discrimination and Retaliation</u>

In the absence of direct evidence, courts analyze discrimination and retaliation claims under the burden-shifting approach first articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and modified in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003), and <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004).

Under the "modified <u>McDonnell Douglas</u> approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case.  <u>Rachid</u>, 376 F.3d at 312.  Once a plaintiff has

established a prima facie case, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for its actions. Id. If the defendant satisfies this burden, then the presumption of discrimination dissolves. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

The plaintiff must then offer evidence to create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid, 376 F.3d at 312 (internal quotation and alteration marks omitted). If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. Id.

    a. **Discrimination**

To establish a prima facie case of discrimination, the plaintiff must show that she: 1) is a member of a protected class; 2) was qualified for her position; 3) suffered an adverse employment action; and 4) was replaced by someone who is not a member of the protected class to which the plaintiff belongs or was treated less favorably than similarly situated employees of a

different race.   See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001)(addressing race discrimination claim).   Proof of disparate treatment can establish the fourth element of the plaintiff's prima facie case.   See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005), cert. denied, 413 U.S. 471 (2006); Okoye, 245 F.3d at 513.   "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals."   Bryant, 413 F.3d at 478.

Although Plaintiff alleged that her termination was discriminatory based on her race/national origin, she was replaced by another Hispanic female coworker.   Thus, Plaintiff must rely on evidence of disparate treatment to raise an inference of discrimination.   In her complaint, Plaintiff claimed disparate treatment, generally alleging that Defendant "intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's Hispanicty [sic], being of Mexican descent."[83]   Other than this use of rote legal language, her complaint does not mention disparate treatment or identify any fact to support a finding of disparate treatment.

---

[83]     Complaint, Docket Entry No. 1, ¶ 25.

Plaintiff does not argue that any nearly identical, similarly situated individual outside of the protected class was not fired despite conduct like that demonstrated by Plaintiff.  No facts in the record suggest that Plaintiff was treated differently from those outside the protected class with regard to the use of Spanish (or any second language) in the workplace.

In fact, it was not until she filed her untimely supplemental response that Plaintiff articulated a theory of disparate treatment.  Therein, Plaintiff alleged discrimination in the form of unequal compensation, an entirely new claim.[84]  In support of the claim, Plaintiff submitted the affidavit of another escrow assistant who worked under Bell.  The affidavit purports to demonstrate that non-Hispanic escrow assistants received extra compensation for performing closings.[85]  The affidavit reads, in pertinent part:

> During the latter part of 2005, I had a telephone conversation with Dalia Pena about her not being a licensed Escrow Officer yet being made to perform closings by Keitha Bell or else run the risk of losing her job.  When Dalia Pena asked me how much I was being paid to perform closings, I told her I and the other Escrow Assistants were being paid an extra hour's wages for performing closings.  Dalia Pena made the comment

---

[84]    The elements of an unequal compensation claim are met by showing that Plaintiff is a member of a protected class and was paid less than someone outside the protected class for work requiring substantially the same responsibility. See Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984); see also Williams v. Galveston Indep. Sch. Dist., 78 Fed. App'x 946, 949 (5th Cir. 2003)(unpublished).

[85]    See Plaintiff's Supplemental Response in Opposition to Defendant's Motion for Summary Judgment, Docket Entry No. 20, Attach. 1 (unnumbered), Affidavit of Shirley Sink.

"You are being paid more than we Hispanic Assistants and you all don't even have to speak Spanish."[86]

The entire affidavit is inadmissible hearsay.

If the court were inclined to ignore Plaintiff's failure to raise this claim in her complaint and her failure to comply with the court's order as to the deadline for filing her response to Defendant's motion, the court would remain unable to consider Plaintiff's new argument on disparate treatment because the only evidence in support of it is not admissible. Accordingly, the court finds that Plaintiff has failed to produce any evidence in support of the fourth element of a prima facie case of discrimination. Plaintiff's race/national origin discrimination claim, as brought under Title VII and Section 1981, must be dismissed.

**b. <u>Retaliation</u>**

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. <u>Harvill v. Westward Commc'ns, L.L.C.</u>, 433 F.3d 428, 439 (5th Cir. 2005). Protected activity includes complaining to supervisors about acts of unlawful discrimination. <u>See</u> 42 U.S.C. § 2000e-3(a). Termination of employment satisfies the second prong of the prima

---

[86]    <u>Id.</u>

facie case of retaliation.  See Burlington N. & Santa Fe Ry. v. White, ___ U.S. ___, 126 S.Ct. 2405, 2410-11, 2412-13 (2006)(expanding the interpretation of adverse employment action to encompass more than hiring, granting leave, discharging, promoting or compensating, all traditionally accepted as qualifying events).

To satisfy the third prong of a prima facie case, plaintiff must put forward some evidence of a causal link between the adverse employment action and the protected activity.  Long v. Eastfield Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996).  The existence of a causal link may be determined by examining three factors:  "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination."  Dehart v. Baker Hughes Oilfield Operations, 214 Fed. App'x 437, 442 (5th Cir. 2007)(unpublished)(citing Nowlin v. Resolution Trust Corp., 33 F.3d 498, 508 (5th Cir. 1994)).  Temporal proximity alone may be a significant factor, but not necessarily determinative of retaliation.  Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995); see also Roberson v. Alltel Info. Servs., 373 F.3d 647, 655 (5th Cir. 2004)(stating that the mere fact that an adverse action occurs after protected activity will not always be enough to establish a prima facie case); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002)(same and adding that Title VII

does not permit employees to ignore work rules or job requirements).

In this case, Plaintiff's first complaint of discrimination appeared in her letter to Lester in April 2005. At a meeting with Robison and Coppock concerning the letter, Plaintiff received a verbal warning to improve her performance in terms of her relations with customers and with Bell. In November 2005, Plaintiff received a written warning for unprofessional behavior. In the meeting with Bell and Coppock to discuss that warning, Plaintiff again claimed discrimination. On February 22, 2006, Defendant terminated Plaintiff for failing to heed the November 2005 warning not to argue with associates.

The only link between Plaintiff's internal complaints of discrimination and her termination is the relatively short period of time between her second complaint in November and her termination in February. The first disciplinary measure taken against Plaintiff occurred after Plaintiff's first report of discrimination in April 2005. The next warning, which was a final warning, did not occur until seven months later, immediately *prior* to Plaintiff's second complaint of discrimination. Defendant's disciplinary actions escalated from verbal warning to final written warning to termination. The protracted, escalating series of disciplinary interventions and their timing in relation to Plaintiff's complaints of discrimination renders the three-month

period between her second complaint and her termination less significant.  These circumstances, absent any evidence in addition to temporal proximity, do not given rise to an inference of retaliation.  Cf. Raggs, 278 F.3d at 471-72 (finding a five-month time period, on its own, to be insufficient, as a matter of law, to meet the plaintiff's prima facie burden).

Plaintiff's Title VII and Section 1981 retaliation claims must be dismissed.

### IV.  Conclusion

Based on the foregoing, the court **GRANTS** Defendant's motion.

**SIGNED** in Houston, Texas, this 3rd day of October, 2007.


Nancy K. Johnson
United States Magistrate Judge

29